May it please the Court, my name is Lawrence Mann. I represent the United Transportation Union. I would like to reserve five minutes for rebuttal, please. Initially, Your Honors, there is no dispute that in railroading, a designated terminal is either the home or away from home terminal, and it shall be determined by reference to the collective bargaining agreements applicable to a particular crew assignment. Now, in railroad parlance, a home terminal is where they go on duty. Away from home terminal is where they're finally released. In this case, the Union Pacific Railroad attempted to negotiate a designated terminal with the Union, and there were several attempts to negotiate it. It was not successful, so the Union Pacific unilaterally designated the terminal. Now, that, in our view, clearly violates the statute. The duty of the Federal Railroad Administration in an Hours of Service Act matter is clearly ministerial. There's no room for exercise of discretion, and the action is demanded by the Hours of Service law. Moreover, the FRA has exclusive jurisdiction here. No other agency can involve itself in the Hours of Service Act. The FRA is contending that another entity under the Railway Labor Act should get involved, but we're not talking about interpreting terms and conditions of a contract. It would take, literally, it would take the Federal Railroad Administration a minute to make a determination. They have to look at the contract, right? They just have to look at it.  It may not be a hard interpretation, but it's an interpretation. It's not interpreting terms and conditions. All they do, Your Honor, is their assignment, did both parties sign it, and is their simply statement of the home and away-from-home terminal. That's it. They're not interpreting the terms and conditions of the agreement. I don't understand. What is it in the contract that jumps out at them? A name of a place? Yes. For a particular crew, it states where that crew goes on duty, that's the home terminal, and where the crew for that assignment is released. It can be back at the home terminal, but that's literally what happens here. And the page they're supposed to look at is what page in the record? The page of the contract that they're supposed to look at? Well, we don't have a contract here. That's the point. You told me it's real simple. All they've got to do is glance at something and there's nothing to interpret. That's right. Tell me what to glance at. That's why there's a violation here. What to glance at? If there was an agreement, they would simply glance at the home and away-from-home terminal. If I'd invested in Apple, I'd be a rich man. The point is, Your Honor, they can't unilaterally do it. It has to be an agreement. Well, I see. They have to create one. And suddenly you're telling us, I mean, we already know the response received by the government or by the agency from the railroad is that we're allowed to do this under the agreement. No. They can unilaterally do it. The statute makes it clear it has to be determined by reference to the collective bargaining agreement. There's no agreement. There's no agreement? There is a collective bargaining agreement. Well, there are many agreements. There are many collective bargaining agreements, but there's not one designating the designated terminal here. There is a collective bargaining agreement that sets forth the procedures that are to be followed. Is there not when a new? For designating? I'm not aware of any. I'm not aware of any. And that's why we're here, because there is no agreement. Isn't there a collective bargaining agreement that says that you're supposed to negotiate? The law states that. The Hours of Service Act states that. And the original, the contract between the union and the railroad did not say that you were to negotiate. No. The statute says you have to negotiate. And in this case, they attempted to negotiate, but they didn't reach an agreement. That violates the statute. Why isn't this being grieved under the collective bargaining agreement? Grieved because it's a Federal statute, Your Honor. Well, see, it seems to me this is the back door. If you're telling me there's no agreement that obligates the railroad to negotiate with the union with regard to a particular location, then I'm not sure what it is the agency is supposed to enforce. A violation of the statute claiming that any point where it's not a designated terminal is time on duty. Well, the statute doesn't say that. Sure. Show me where it says that in the statute. Oh, I don't think there's a dispute of that, Your Honor. Well, you're requiring this designated place to be a subject of agreement. Yes. Does the statute say that the railroad can't specify pursuant to whatever larger agreement it has with the union? If there was an agreement, they could do that. Well, we have a problem here that you say there was a negotiation, but they couldn't agree. Correct. So in your view, that means what? It means it violated the statute, the Hours of Service Act, that mandates that there must be an agreement to establish a home or a way from home. So as long as there's no agreement and the negotiations fail, then they can't do this. That's correct. They can't do it without it being time on duty for the crew. So if there's no agreement and the railroad unilaterally does this, it's time on duty. And it's exactly the same issue that this Court ruled on in 1975. Exactly the same, USD Atchison, Topeka, and Santa Fe Railroad. The only factual difference is, is in that case, there was an interim release, and the railroad unilaterally said that's a designated terminal. Well, at that time, the FRA said, no, it has to be pursuant to a collective bargaining agreement. And here, the FRA is saying, well, we can't look at agreements. But they looked at agreements in 1975. In fact, it said that they reviewed a multitude of agreements for purposes of enforcing the Act. There is literally, on all fours, the legal principle in the 1975 case and this case. No distinction. They can't, the only, the reason that the FRA gives for reviewing agreements in that case, it says to inform the agency. Well, that was for purposes of enforcing the Act. And they can do the same here. They could allegedly look, if there was an agreement, they could look at it. So we contend there's absolutely no difference in the two, this case and that case. And I think it's worth mentioning what would happen if the case had to be referred to the Railway Labor Act procedure through the Railroad Adjustment Board. As the Court probably knows, this is created by Congress. Congress funds it. And there's a long history of inadequate funding so that the cases sit for an extraordinary length of time. It's burdensome. You have to write briefs. You sit there for ages. And it's, and moreover, one other point to that is it's never mentioned in the legislative history that ours serves that there should be another agency involved here. It's exclusive with the FRA. And even in a policy statement by the FRA in 1977, and it happens to be at page 7 of their brief, the policy statement never mentions anything about the fact that they should look at, some other entity should look at the agreement. Not a word. There's not a word in the legislative history anywhere. This is the first time. Well, why don't you, I find this case really quite confusing. Your position, why don't you give us your view of what your position was when you asked, when you went to the FRA and what their position was. Okay. My position was since there was no agreement under the Hours of Service Act, the railroad has no authority to unilaterally create a designated terminal. That is, the bargaining took place. They were unable to agree, so therefore they have no authority unilaterally to designate a terminal. That's correct. And you are speaking of what document that gives them no authority? The Hours of Service Act. The statute. The statute. And there's, again, there's no disagreement that the determination of a designated terminal must be determined by reference to the collective bargaining agreement. And if there's no agreement, that's a violation of the statute. Well, what is the significance in your view of the 1985 agreement that is in the record? Well, that agreement does not specify designated terminals. It talks about interdivisional runs. Right. But it does not mention designated terminals. That's a term that's very significant to the rail workers. And we have hundreds of agreements nationwide, Your Honor, and there's only a couple of railroads that have attempted to do this unilaterally. Well, there's a procedure, though. This is what I'm not understanding. There's a procedure that says that they serve a notice. That's for interdivisional runs. Right. But not for designated terminals. Well, it's not that there's not a mention anywhere in that agreement in 1985 of designated terminals. Nowhere. And so you're saying that this has to do only with the run and not with the terminals? That's your concern? That's correct. And that the Board is wrong in saying that we're not going to look at that to interpret whether it applies or not? The FRA has said that. Yes. Yet they did in the 1975 case before this Court. Okay. Thank you. I'd like to reserve back the remainder. Okay. Good morning. May it please the Court. My name is Joy Park, and I represent the Department of Transportation and FRA, the Federal Railroad Administration. This case arises out of a dispute between the United Transportation Union and the Union Pacific Railroad regarding the designation of a new terminal under the terms provided under a collective bargaining agreement. Because FRA lacks the authority to do so. Now, what collective bargaining agreement are you talking about? The collective bargaining agreement between the railroad and the United Transportation Union. I believe Petitioner's provided a copy or excerpts of it in the record. This is the one at ERF 2324? Yes. Yeah. Okay. Again, the issue in this case, there is a dispute between the railroad and the union about the terms of a collective bargaining agreement. Ultimately, because FRA lacks the authority to interpret collective bargaining agreement. Now, why is it a dispute over the collective bargaining agreement? Isn't it really a dispute over what are the terminal, whether there are going to be terminals for this new run? Respectfully, we disagree, Judge Schroeder. As noted in the supplemental excerpts of record, once the United Transportation Union brought this issue to the FRA through its letter reflected in the record on page 3, FRA investigated the matter and actually contacted Union Pacific Railroad to find out further information. That email correspondence is reflected, again, at the supplemental excerpts on page 3. Union Pacific Railroad responded by saying that under its position, the collective bargaining agreement actually allows the railroad to begin trial service at a new designated terminal while negotiations are still ongoing. Thus, based upon that response, the FRA took that as a good faith response from the railroad and determined that this was essentially a dispute about the terms of a collective bargaining agreement. And so the union's position was that the collective bargaining agreement doesn't say anything about terminals. Right. Yes, Your Honor. And so the FRA said this is a dispute over what the collective bargaining agreement says. Right. The FRA made no position on whether or not this was the appropriate, that the collective bargaining agreement indeed allowed the railroad to do this. Again, that would require us to interpret the collective bargaining agreement. Well, okay. So what happens? You know, here we have the parties and the railroad says we're going to have this run and we're going and we're supposed to negotiate about the terminals and what's going to happen to the railroad workers and they can't agree. Now, what happens in your view? I have two responses to that, Judge Schroeder. Under the Supreme Court's holding in Andrews v. Louisville and Nashville Railroad Company, the Supreme Court has stated that only a body duly constituted under the Railway Labor Act can interpret a collective bargaining agreement. So where do they go? They go to the National Railroad Adjustment Board and that is a body duly constituted under the Railway Labor Act. We discussed this in our brief at footnote six. Furthermore, the procedures that are spelled out in the Railway Labor Act are actually compulsory or required and the Supreme Court has noted that in Andrews. Therefore, assuming that, as opposing counsel noted, that negotiations were unsuccessful, the next required step for a minor dispute, which is a dispute that occurs with regard to the interpretation or application of a particular term within a collective bargaining agreement, that should go to arbitration before the National Railroad Adjustment Board. And they're backed up and that is, you know, that's not, according to what's in this record, that's not actually available as a practical matter. So what happens? Respectfully, Your Honor, that's what the statute requires under the Railway Labor Act. I do understand that. But as a practical matter, I'm just trying to understand, is there a terminal? Is this run going on? What are the employees doing? Under our own investigation, it appears that actually the railroad is not currently using this new designated terminal. Again, we don't know if that is what the reasons are for that, if it's because of this litigation or if the railroad has simply decided to not use this new designated terminal. However, again, the procedures. Which the union says is out in the middle of nowhere and has no facilities or anything. Respectfully, we would disagree. Well, I understand. We did, FRA did do a cursory search and the location provided by both the United Transportation Union and the Union Pacific Railroad is approximately 8 to 10 miles from Palmdale, California, which is a town of approximately 150,000 people. Because both the Supreme Court's holding in Andrews and the Railway Labor Act state that only a body duly constituted under the Railway Labor Act can interpret collective bargaining agreements, FRA correctly decided that it could not intervene in this dispute. Briefly, I would like to respond to opposing counsel's argument that we need merely review or perform a ministerial role. That's incorrect. As noted by the factual assertions from the Union Pacific Railroad, they argue that the collective bargaining agreement actually allows them to do what they were proposing to do in terms of creating a terminal on a trial basis. Thus, there is a dispute about a collective bargaining agreement and FRA lacks the authority to intervene. Let me ask you this because I'm trying to figure out what the FRA can do. If there were a collective bargaining agreement that spelled out the various terminals for the runs and the union goes to the FRA and says they're making us use a terminal that's not in the agreement. Just look, this is not one of the listed places. Could the FRA do that? I think it would highly depend upon the facts of that scenario. If it came down to, again, the issue such as in this case where there's actually a good faith dispute between the parties. No, no. I'm just saying the agreement we negotiated says that the terminal for this run is supposed to be at X and they're making the terminal Y. And so this is bad for the working conditions of the employees and under the act they're supposed to be using the designated terminal. Can the board just look or the agency just look and say you're right, you're supposed to be stopping here rather than there? Yes, the agency can enforce the hours of service laws assuming there's not a dispute that's grounded upon the termination. The termination. If it's just the wrong thing, then they can't do it. Right. And again, once either a body duly constituted under the Railway Labor Act either issues a decision or the parties actually agree themselves that a designated terminal has not been properly designated, the agency does have the ability to enforce the hours of service laws and to ensure that any time that was allocated to that particular designated terminal is counted as off-duty time. And so that's a very different scenario than what is before the court today. I would also like to respond to petitioner's counsel's reliance upon a previous brief that the agency filed in United States versus Atchison, Topeka and Santa Fe Railway. Respectfully, that brief and what the United States wrote in that brief is irrelevant to the issue before the court today. The timing of when that brief was filed is important. It was filed in 1975 prior to the 1978 hours of service law amendments. And it's in the 1978 amendments that Congress provided a definition of designated terminal, which now appears at 49 U.S.C. section 21101. Prior to 1978, there were disputes within the industry about what constituted a designated terminal. Thus, FRA needed to step in and make an interpretation from the agency's perspective, and it did  to the legislative history of the hours of service laws, which specifically referenced that designated terminals should be determined pursuant to collective bargaining agreements. Thus, the agency actually reviewed collective bargaining agreements to see if this was true. The agency was simply doing that for terminology to see if the term designated terminal did, in fact, appear in collective bargaining agreements. It was not interpreting collective bargaining agreements, and thus, that's very different than what petitioners are asking the agency to do in this instance. If the court has no further questions, we respectfully ask this court to deny the petition for review. Thank you. Your Honor, just a few points. Congress agreed with you in the 1975 case. They adopted basically what you ordered in that decision. Well, it was in the definition of designated terminal. Yes, and that it had referenced the collective bargaining agreement. But nowhere in the legislative history, literally nowhere was it mentioned that some other entity, such as the National Railroad Adjustment Board, should get involved in interpreting. This is solely, exclusively the function of the FRA to determine whether or not there is a home and away from home terminal. That's it. That's determined by just simply looking at the signed document. And if they don't find that, then it's a violation of the statute. That's all they need to do. And they did that also in the 1975 case. They found that at interim release point was not a designated terminal. They didn't ask the National Railroad Adjustment Board to review those agreements. The FRA reviewed them. Well, but the problem is that they're not just saying is this a designated terminal. You're the question is not just is this a designated terminal. The question is whether or not they have the authority to designate it, isn't it, unilaterally? Yes. Well, that's the same thing in the 1975 case. Did the railroad have the authority to designate that interim relief as a designated terminal? There's no legal distinction between this case and that. Thank you. Thank you. We thank both counsel for your arguments. The case just argued is submitted. The next case for argument is Sulz v. Standard Insurance Company. Thank you.
judges: Schroeder, Noonan, Clifton